IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN RE: COTTON YARN ANTITRUST LITIGATION | ) ) ) CIVIL ACTION NO. 1:04MD1622 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) |

MEMORANDUM OPINION

BEATY, District Judge.

I.    INTRODUCTION

This multidistrict litigation is before the Court upon Defendants' Motion to Dismiss the Complaint as to Certain Plaintiffs and Compel Arbitration, and to Stay the Case as to the Remaining Plaintiffs [Document #9].   Plaintiffs are individuals and entities that purchased cotton yarn in the United States from Defendants Frontier Spinning Mills, LLC, Frontier Spinning Mills, Inc., and Frontier, Inc. (collectively "Frontier") and Defendants Avondale Mills, Inc. and Avondale, Inc. (collectively "Avondale") (Frontier and Avondale, collectively, "Defendants") from January 1, 1999 to February 11, 2004.[1] Defendants are seeking to compel arbitration against seven Plaintiffs based upon their allegations that certain of these Plaintiffs

---

[1] Since this Motion was filed, Defendants Parkdale America, LLC, and Parkdale Mills, Inc. (collectively "Parkdale"), have settled with Plaintiffs and have withdrawn from the Motion to Dismiss.  For this reason, specific details related to Parkdale's arbitration clause that was signed at some point by Plaintiffs Atlantic Textiles, Thomaston Mills, and Lisa Lesavoy will be omitted from this Memorandum.  However, the Court notes that Parkdale's arbitration clause contains similar language to the invoices of Frontier and Avondale, and so the ultimate disposition of this case regarding that particular contract language would apply equally to Parkdale's arbitration provision.

received a sales contract containing an arbitration clause either along with or just prior to receiving a yarn shipment.  Defendants further contend that these Plaintiffs did not thereafter object to the terms contained in the sales contract, or that they received the sales contract, signed it, and returned it to Defendants.  The seven Plaintiffs in this group are:  Atlantic Textiles ("Atlantic Textiles"), South Carolina Tees, Inc. ("SC Tees"), Lisa Lesavoy ("Lesavoy"), Armen Co., Inc. ("Armen"), Del Cartier Associates, Inc. ("Del Cartier"), Perfect Fit Glove Co., LLC ("Perfect Fit"), and Thomaston Mills, Inc. ("Thomaston Mills").  Additionally, Defendants are seeking a stay of the Consolidated and Amended Class Action Complaint [Document #7] as to Plaintiffs Mekfir International Corp. ("Mekfir") and Ronald Little ("Little"),[2] neither of which received a sales contract containing an arbitration term.[3]

In an Order dated August 3, 2005, the Court set a hearing with respect to the Motion to Dismiss and invited the parties to particularly discuss the arguments raised in their memorandums, as well as the suitability and severability of the arbitration terms as to a conspiracy price-fixing case.  The Court further directed the parties to answer whether the suitability of the arbitration terms should be decided in the first instance by an arbitrator or by

---

[2] The Court will refer to Plaintiffs Atlantic Textiles, Del Cartier, SC Tees, Thomaston Mills, Armen, Perfect Fit, Lesavoy, Mekfir, and Little collectively as "Plaintiffs."

[3] Defendants note in their Reply Memorandum [Document #22] that since filing their Motion to Dismiss, they have discovered that Plaintiff Mekfir had "several contracts," unsigned, with Defendant Parkdale.  Because Parkdale is no longer a part of the Motion to Dismiss, however, this Court will consider Mekfir's status as more closely aligned with Plaintiff Little, for whom no contracts have been discovered with the remaining Defendants.

2

this Court. The hearing was held on August 30, 2005. During this hearing, Defendants presented the Court with three cases to support their position: Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Havird, 518 S.E.2d 48 (S.C. Ct. App. 1999); Smith Barney, Inc. v. Bardolph, 131 N.C. App. 810, 509 S.E.2d 255; and Book Depot Partnership v. American Book Co., No. 3:05-CV-163, 2005 WL 1513155 (E.D. Tenn. June 24, 2005). Defendants argued that these cases answered the specific questions raised by the Court. Subsequent to the hearing, Plaintiffs filed a letter brief with the Court "for the limited purpose of demonstrating that the cases handed up by defense counsel are inapposite." (Letter, dated September 2, 2005.) On September 9, 2005, Plaintiffs filed a Supplemental Memorandum [Document #31] that contained the same substantive information as the letter briefing. Defendants, however, have filed a Motion to Strike [Document #35] Plaintiffs' letter briefing, as well as the Supplemental Memorandum, as being inappropriately filed. The Court will consider Defendants' Motion to Strike and their Motion to Dismiss in turn.

## II.    FACTUAL BACKGROUND

As part of their Consolidated Complaint in the multidistrict litigation, Plaintiffs allege that during the class period, Defendants entered into contracts and conspiracies among themselves to fix, maintain, or stabilize prices for cotton yarn sold in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[4]   As a result, Plaintiffs seek treble

---

[4] The Sherman Act provides, in relevant part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.

3

damages and injunctive relief based upon numerous contracts between Plaintiffs and Defendants to purchase cotton yarn during the Complaint period.

Defendants have responded to Plaintiffs' Consolidated Complaint by asserting that seven of the named Plaintiffs agreed to arbitrate their Sherman Act claims with the remaining Defendants, that is, Frontier and Avondale, when they agreed to purchase cotton yarn. With respect to Defendant Frontier's agreements with Plaintiffs, Frontier submitted six "sales contracts" along with its Motion to Dismiss, one for each of these Plaintiffs: Atlantic Textiles, SC Tees, Lesavoy,[5] Armen, Perfect Fit, and Thomaston Mills. Of these six "sales contracts" submitted by Defendant Frontier, two were *signed* by the named buyer: the February 14, 2003 "sales contract" submitted to Perfect Fit and the June 4, 2001 "sales contract" submitted to Thomaston Mills.[6] Plaintiffs readily acknowledge that three signed sales contracts do in fact exist between Frontier and Plaintiff Lesavoy. Defendants have not submitted any of the other "sales contracts" that were purportedly signed by the buyer.[7] Frontier did not do business with Del

---

[5] Lesavoy is the successor in interest to Apparel Sales & Printing, Inc. ("Apparel Sales"). The "sales contract" at issue lists Apparel Sales as the buyer. However, in the interest of clarity, this Court will only refer to Lesavoy as the buyer.

[6] Defendants submitted a second signed "sales contract" submitted to Thomaston Mills along with their Reply. (Defs.' Reply Mem., Ex. A.) This "sales contract" was dated May 29, 2001.

[7] Most of these documents have not been submitted to the Court. Documents also have not actually been submitted to show that Thomaston Mills signed three other "sales contracts" and Perfect Fit signed thirteen other "sales contracts." Plaintiffs, however, have admitted that these specific documents exist and have been signed as noted. (Pls.' Response Mot. Dismiss, Decl. of Mindee J. Reuben, Ex. 1.)

4

Cartier, so there would be no evidence of a sales contract between them.

Secondly, as to proof of Defendant Avondale's agreements with any of the Plaintiffs, Avondale attached 26 documents to the Motion to Dismiss that were titled, if at all, as "confirmations," with respect to sales with Atlantic Textiles, Del Cartier, SC Tees, and Thomaston Mills. None of these documents, however, were signed by any of the Plaintiffs, although the documents or "confirmations" do not appear to require a buyer's signature. Avondale did not do business with Armen, Lesavoy, or Perfect Fit, so there is no evidence being submitted as to a sales contract or confirmation between any of these Plaintiffs and Avondale.

According to declarations of Plaintiffs, without objection from Defendants, eighty percent (80%) of the sales contracts produced by the parties in limited discovery on the arbitration issue were not signed by any Plaintiff. Furthermore, declarations by representatives of Plaintiffs reveal that the vast majority of contracts between Plaintiffs and Defendants were agreed to orally, through telephone calls. (Pls.' Resp. Mot. Dismiss, Decl. of Armen rep. George Davitian, Decl. of Perfect Fit rep. Richard Siskar, Decl. of Atlantic Textiles rep. Peter Mimmo, Decl. of Del Cartier, Decl. of Thomaston Mills rep. Walter L. Brown, Ex. 2-6.) During these calls, essential terms such as price and quantity were set. Defendants would then either mail invoices prior to shipment of the goods or deliver the invoices along with the goods. (Id.) It is important to note that arbitration was not specifically discussed during any of these phone conversations. (Id.) Plaintiffs further assert that of those individual Plaintiffs that did sign and return the contracts to various Defendants, each Plaintiff did so based upon its belief that the

5

signatures were only intended to confirm the essential terms of earlier oral contracts with Defendants. Plaintiffs indicate that their respective signatures, however, were not in any way intended to be an assent to any of the fine print language or terms on the back of the sales contracts. (Id.)

Defendants Frontier and Avondale's sales contracts had different but similar arbitration provisions. For example, to the extent that they are essential to the issue before the Court, Frontier's arbitration provision provides in pertinent part as follows:

> 1. ARBITRATION AND JURISDICTION: (a) At the option of Seller, any controversy arising out of or relating to this contract (including any modifications thereof) shall be settled by arbitration in the City of New York in accordance with the Rules of the General Arbitration Council of the Textile and Apparel Industries or in the City of Winston-Salem, North Carolina in accordance with the rules of the American Arbitration Association . . . .
>
>> (b) The arbitrators or courts may include in their award to the prevailing party (in addition to all other damages) an award of reasonable attorneys' fees and reimbursement for other fees and costs in connection with all proceedings under this contract.
>> (c) Seller shall have all rights to provisional remedies which it would have at law or equity, notwithstanding the existence of this agreement.
>> (d) Buyer shall not be entitled to join, implead or intervene other parties or assert other disputes with Seller by offset, defense, or counterclaim or by consolidation of proceedings or otherwise with any proceeding hereunder. . . .
>> (f) Any claim by Buyer of any kind, nature or description is barred and waived unless Buyer institutes arbitration proceedings within one (1) year after the claimed breach occurs. The failure to institute arbitration proceedings within this one year period shall constitute an absolute bar to the institution or any arbitration or other proceedings by Buyer and a waiver of all claims on Buyer's part. All issues relating to Statute of Limitations barring or

preventing the commencement of proceedings are not arbitrable and shall be determined by the Court and not the arbitrators who shall have no power or jurisdiction to determine such issues. Participation in the arbitration shall not constitute a waiver of the Statute of Limitations.

18. FUTURE TRANSACTIONS: Except to the extent a future transaction is governed by a signed contract between the parties, the terms and conditions hereof, including, without limitation, the arbitration provision, shall govern all further transactions.

In addition, Defendant Avondale's arbitration provision provides, in pertinent part, as follows:

1. ARBITRATION: (a) Any controversy arising out of or relating to this contract (including any modifications thereof) shall be settled by arbitration in the City of New York in accordance with the Rules of the American Arbitration Association or the General Arbitration Council of the Textile and Apparel Industries, as determined by the party instituting the arbitration, and judgment upon the award rendered may be entered in any court having jurisdiction thereof . . . .

(b) The parties shall have all rights to provisional remedies which it would have at law or equity, notwithstanding the existence of this agreement to arbitrate.

(c) Buyer shall not be entitled to join, implead or intervene other parties or assert other disputes with Seller by defense or counterclaim, or by consolidation of proceedings or otherwise with any arbitration proceeding hereunder. . . .

(e) Any claim by Buyer of any kind, nature or description is barred and waived unless Buyer institutes arbitration proceedings within one (1) year after the claimed breach occurs. The failure to institute arbitration proceedings within this one year period shall constitute an absolute bar to the institution of any arbitration or other proceeding by either party and a waiver of all claims on Buyer's part. All issues relating to Statute of Limitations barring or preventing the commencement of proceedings are not arbitrable and shall be determined by the Court and not the arbitrators who shall have no power or jurisdiction to determine such issues. Participation in the arbitration shall not constitute a waiver of the Statute of Limitations.

7

(f) The fees and expenses of such arbitration proceedings, including reasonable counsel fees, may be allocated between the parties or charged to any one of the parties by the arbitrators as part of their award.

21. FUTURE TRANSACTIONS: Except to the extent that a future transaction is governed by a signed contract between the parties, the terms and conditions hereof including, without limitation, the arbitration provision, shall govern all further transactions.

Based upon these arbitration provisions, Defendants argue that Plaintiffs must be compelled to arbitrate their claims against Defendants, and therefore ask that this Court find under Federal Rule of Civil Procedure 12(b)(1) that the Court lacks subject matter jurisdiction of the litigation before the Court. In response, Plaintiffs argue that the arbitration provisions in the sales contracts of both Defendants Frontier and Avondale were not a part of their oral contracts with Defendants. Plaintiffs also contend that the arbitration clauses at issue do not apply to an antitrust action. In the alternative, Plaintiffs further contend that even if these arbitration clauses were part of the contracts between the parties, the terms of the arbitration provisions themselves are both unenforceable as applied to statutory price-fixing claims and unconscionable under North Carolina law.

For the reasons that follow, the Court finds first that Defendant Frontier's arbitration clause, under North Carolina law, did not become a part of the contracts with those Plaintiffs who did not sign and return the form to Defendant Frontier, that is, Plaintiffs Atlantic Textiles, SC Tees, and Armen, but that it did become a part of the contracts with those Plaintiffs who signed and returned the form, that is, Lesavoy, Perfect Fit, and Thomaston Mills. However, the

8

Court additionally finds that Defendant Avondale's arbitration clause, under South Carolina law, did become a part of the contracts of even those Plaintiffs who did not sign and return the form to Defendant Avondale, that is, Atlantic Textiles, SC Tees, Thomaston Mills, and Del Cartier. Second, as to all Plaintiffs for whom an arbitration clause was a part of their contracts with Defendants, the Court nevertheless finds that the particular arbitration clauses of Defendants Frontier and Avondale would not allow Plaintiffs to effectively vindicate their Sherman Act claim, and as such, are unenforceable. Based upon these findings, the Court notes that subject matter jurisdiction does exist with respect to Plaintiffs' claims against Defendants, and Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) will be denied. Furthermore, Defendants' alternative Motion to Stay the claims of Plaintiffs Mekfir and Little, admitted by the Defendants as not being covered by arbitration agreements, will be denied. But first, before analyzing these issues related to the arbitration agreements, the Court will consider Defendants' Motion to Strike.

## III.   MOTION TO STRIKE

As noted above, in an Order dated August 3, 2005, the Court scheduled a hearing regarding the Motion to Dismiss, and invited the parties to particularly discuss whether the suitability of the arbitration terms should be decided in the first instance by an arbitrator or by this Court. The hearing was held on August 30, 2005. During this hearing, Defendants presented the Court with three cases that Defendants believed answered the specific questions raised by the Court. Subsequent to the hearing, Plaintiffs filed a letter with the Court "for the

9

limited purpose of demonstrating that the cases handed up by defense counsel are inapposite." (Letter, dated September 2, 2005.) Plaintiffs then also filed the same letter brief as a "Supplemental Memorandum" on September 9, 2005 [Document #31]. In response, Defendants filed a Motion to Strike [Document #35] this letter briefing and Supplemental Memorandum as not permitted by either the local rules or this Court's First Case Management Order, dated March 16, 2005, which stated that all pleadings filed less than ten days prior to any scheduled status conference, unless permitted in advance by the Court, would be disregarded. Defendants also argue that Plaintiffs did not object to Defendants handing up additional case law during the hearing, nor did Plaintiffs ask the Court for permission for additional briefing.

Having considered the arguments of both parties, the Court finds that Plaintiffs have disregarded Local Rule 7.3, which only allows for the filings of motions, responses, and replies, and filings of subsequently decided authority, without argument. The Court notes that the Court's August 3, 2005 Order specifically requested that the parties address this issue, and that Plaintiffs were given the opportunity to argue against the authority put forward by Defendants but failed to specifically do so. Furthermore, Plaintiffs failed to ask the Court for permission at the hearing itself (or at any time thereafter) to file such a supplemental briefing. As such, Defendants' Motion to Strike Plaintiffs' letter brief and Supplemental Memorandum is granted, and the Court will not take into account arguments raised in Plaintiffs' supplemental filing in deciding Defendants' Motion to Dismiss. Having determined the pending procedural issues, the Court will now turn to an analysis of Defendants' Motion to Dismiss.

IV.    MOTION TO DISMISS

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration."  9 U.S.C. § 3.  In the Fourth Circuit, a litigant can "compel arbitration under the FAA if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."  Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (internal quotations omitted).  In this case, Plaintiffs respond to Defendants' demand for arbitration by contesting the second element, that is, whether there was an agreement to arbitrate.  More specifically, Plaintiffs argue that under U.C.C. § 2-207, there was no agreement to arbitrate between the parties.  Alternatively, Plaintiffs argue that the arbitration clauses at issue do not apply to antitrust lawsuits, but only to contract disputes, and that if the arbitration clauses do apply to antitrust claims, then this Court should find these particular arbitration clauses to be either unenforceable or unconscionable under North Carolina law.  The Court will now address these arguments.

A.    Standard of Review

Federal policy favors arbitration.  See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983) ("[A]ny doubts concerning the scope of

11

arbitrable issues should be resolved in favor of arbitration."). However, "there still must be an underlying agreement between the parties to arbitrate." Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997). Whether there is an arbitration agreement concerning a particular dispute is determined by state law that governs contract formation. See Adkins, 303 F.3d at 501. As such, state law concerning validity, revocability, or enforceability of contracts generally may be applied by a court to determine whether the parties agreed to arbitrate their dispute. See Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005).

Defendants have nevertheless argued that this Court has no jurisdiction beyond determining whether, under North Carolina law, there was an agreement to arbitrate between the parties. More specifically, Defendants argue that the question of whether any of the particular provisions within the arbitration clauses are unenforceable as applied to a Sherman Act claim must be left to an arbitrator. However, the Court finds that argument unavailing. Defendants primarily cite to Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 123 S. Ct. 2402 (2003).[8] In Bazzle, the U.S. Supreme Court considered the question of who should decide

---

[8] As previously discussed, Defendants also handed up to the Court during a hearing on this issue three cases: Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Havird, 518 S.E.2d 48 (S.C. Ct. App. 1999); Smith Barney, Inc. v. Bardolph, 131 N.C. App. 810, 509 S.E.2d 255; and Book Depot Partnership v. American Book Co., No. 3:05-CV-163, 2005 WL 1513155 (E.D. Tenn. June 24, 2005). The Court finds that these three cases can be distinguished from the case at hand. All three cases concern the incorporation of a particular arbitration association's rules into the arbitration clause itself in order to determine who should decide the arbitrability of the dispute. However, the Fourth Circuit Court of Appeals stated in Carson v. Giant Food, Inc. that an arbitration clause must "clearly and unmistakably" demonstrate an intent to allow arbitrators to decide questions of arbitrability before the courts will cede that responsibility. Carson v. Giant Food, Inc., 175 F.3d 325, 330 (4th Cir. 1999). In this case, neither Defendant specifically

whether a particular arbitration provision allowed class arbitration. The court determined that that particular question, whether class arbitration was permissible, did not concern either the validity of the arbitration clause or its applicability to the underlying dispute between the parties, but instead concerned what kind of arbitration proceeding the parties had agreed to conduct. Id. at 453, 123 S. Ct. at 2407. As such, "[a]rbitrators are well situated to answer that question. Given these considerations, along with the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts, to decide." Id.

However, the Court notes that in Bazzle, the language of the arbitration clause at issue was ambiguous as to whether class arbitration would be permitted. Lower courts applying Bazzle have distinguished Bazzle based upon the fact that the arbitration agreements in their

---

names only the rules of one professional organization as the applicable rules to guide any potential arbitration, as both Defendants permit arbitration either by the American Arbitration Association ("AAA") or the General Council of the Textile and Apparel Industries. See Merrill Lynch, 518 S.E.2d at 50 (applying National Association of Securities Dealers rules); Smith Barney, 509 S.E.2d at 260 (same); Book Depot, 2005 WL 1513155, at *3 (applying AAA rules). Thus, as a threshold matter, neither Defendants' arbitration clause is particularly clear and unmistakably asserts whose rules will apply to any particular arbitration. Additionally, the Court disagrees with Book Depot's finding that the sole addition of language concerning whose rules will apply in arbitration clearly and unmistakably alerts contracting parties that the courts' traditional role, that is, of determining whether an arbitration clause even applies to the dispute at hand, has been usurped by an arbitrator. See Carson, 175 F.3d at 330-31 ("Those who wish to let an arbitrator decide which issues are arbitrable need only state that 'all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration,' or words to that clear effect. Absent such clarity, we are compelled to find that disputes over the arbitrability of claims are for judicial resolution.") As such, the Court need not address these three cases further.

cases clearly prohibit rights afforded to individuals under particular statutes, or clearly prohibit other procedural rights.  See, e.g., Safranek v. Copart, Inc., 379 F. Supp. 2d  927, 934 (N.D. Ill. 2005) (arbitration agreement clearly prevented awarding of attorney's fees not in line with Title VII precedent); Gipson v. Cross Country Bank, 354 F. Supp. 2d 1278, 1286 (M.D. Ala. 2005) (arbitration agreement clearly prohibits class arbitration, so that court could consider whether such a prohibition is valid and enforceable).  Thus, where a particular statutory or procedural right is clearly prohibited by an arbitration agreement, the Court need not send the case to arbitration for an arbitrator to determine that question prior to the Court considering whether such a prohibition is unenforceable.

Furthermore, the U.S. Supreme Court has itself stated, concerning the arbitrability of statutory claims, that statutory claims, including antitrust claims, may be arbitrated only "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum," in order that "the statute will continue to serve both its remedial and deterrent function."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637, 105 S. Ct. 3346, 3359 (1985); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 1652 (1991) (stating that, by agreeing to arbitrate, a party "does not forgo the substantive rights afforded by the statute . . .").  Lower courts have agreed and applied arbitration to statutory claims, but only if the arbitral forum "allow[s] for the effective vindication of that claim.  Otherwise, arbitration of the claim conflicts with the statute's purpose of both providing individual relief and generally deterring unlawful conduct through the enforcement of its

14

provisions." <u>Floss v. Ryan's Family Steak Houses, Inc.</u>, 211 F.3d 306, 313 (6th Cir. 2000). Thus, these Courts reached the question of whether an agreement to arbitrate existed and whether its particular provisions would allow for the effective vindication of statutory rights.

As such, the Court finds that it may inquire into all of Plaintiffs' arguments against compelling arbitration, including whether these particular arbitration clauses would allow Plaintiffs to effectively vindicate their statutory rights under the Sherman Act. Having determined that it is for the Court to decide all three issues, that is, (1) whether an agreement to arbitrate existed under state law, (2) what claims were included in the scope of that arbitration agreement, and (3) whether the agreement in this case is enforceable, the Court will now turn to an analysis of the first issue with respect to whether an agreement to arbitrate was formed under applicable state law.

B.      North Carolina and South Carolina Contract Law Concerning U.C.C. § 2-207

As a preliminary matter to addressing the parties' contractual arguments, the Court notes that the parties agree that North Carolina law should be applied to Defendant Frontier's contracts, and that South Carolina law likely applies to Defendant Avondale's contracts, based upon choice of law provisions in Frontier and Avondale's respective sales contracts.[9] The Court will therefore apply North Carolina contract law to Defendant Frontier's contracts, and will then apply South Carolina law to Defendant Avondale's contracts, with respect to whether the

_____

[9] At some point during the class period, Avondale added a South Carolina choice of law provision to its sales contract.

15

provisions of the sales contracts became part of the agreements between the parties based on the application of Uniform Commercial Code ("U.C.C.") § 2-207.

a. Defendant Frontier's Contracts Under North Carolina Law

Plaintiffs argue that under North Carolina contract law, particularly <u>Frances Hosiery Mills, Inc. v. Burlington Industries, Inc.</u>, 285 N.C. 344, 204 S.E.2d 834 (1974), Defendant Frontier's attempts to add an arbitration clause to their oral agreements to buy cotton yarn constituted a material change to their contracts. As such, and because Plaintiffs never agreed to such a change, Plaintiffs argue that the arbitration clauses should not be considered a part of their agreements with Defendant Frontier.

North Carolina has adopted U.C.C. § 2-207 (at N.C. Gen. Stat. § 25-2-207), in which, after an oral agreement or receipt of a written contract by a merchant, a subsequent writing of acceptance with additional terms will become part of the contract between merchants unless a party objects, or unless those terms materially alter the contract.[10]

---

[10] N.C. Gen. Stat. § 25-2-207. Additional terms in acceptance or confirmation

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

16

Under North Carolina law, arbitration provisions are a *per se* material change to a contract. Frances Hosiery, 285 N.C. 344, 357, 204 S.E.2d 834, 842 (1974). Thus, under Frances Hosiery, (a case specifically concerning the textile industry), where a plaintiff buyer received confirmatory documents containing an arbitration clause but did not sign and return a copy to the seller, nor at any other time manifested to the seller consent to the arbitration clause, that clause did not become part of the contract between merchants. Id. This case has not been overruled by North Carolina courts, even though other jurisdictions have relaxed similar *per se* rules in favor of allowing arbitration to go forward. See, e.g., Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 296 n.5 (2d Cir. 1999) (applying New York law and stating that New York's *per se* rule against arbitration must be relaxed because of the prohibition in § 2 of the FAA that preempts any state law that attempts to treat arbitration agreements differently from any other contracts).[11]

---

> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

[11] The Court notes at this time that the Fourth Circuit Court of Appeals has specifically addressed this same question, and unlike the Second Circuit Court of Appeals, found that a *per se* materiality rule as applied to an arbitration clause does not violate the prohibition in § 2 of the FAA. The court decided that a *per se* rule, as applied to arbitration agreements, does not treat arbitration differently than any other proposal for additional terms to a contract between merchants. This is because the Fourth Circuit found that N.C. General Statute § 25-2-207 is a rule of contract formation, not a conflicting state law that restricts the validity or enforceability of arbitration agreements. See Supak & Sons Mfg. Co. v. Pervel Industries, Inc., 593 F.2d 135, 137 (4th Cir. 1979) ("We see no conflict between § 2 [of the FAA] and U.C.C. § 2-207, as

17

In response to the clear rule of <u>Frances Hosiery</u>, Defendant Frontier makes two primary arguments. First, Defendant Frontier argues that § 2-207 does not apply to this case because there was no "battle of the forms" between Defendant and Plaintiffs. Second, Defendant Frontier argues that Plaintiffs accepted any material terms by retaining the merchandise without objection. For this argument, Defendant Frontier points in particular to <u>Real Color Displays v. Universal Applied Techs. Corp.</u>, 950 F. Supp. 714 (E.D.N.C. 1997) as establishing the rule that Plaintiffs' silence in the wake of Defendant's "sales confirmations" must equal acceptance of additional, material terms. The Court will now discuss each of these arguments in turn.

While Defendant Frontier urges that this Court should find that § 2-207 does not apply to its contracts with Plaintiffs because there was no "battle of the forms," in which merchants send each other competing forms with boilerplate language, this section clearly applies as well to oral agreements followed by a written confirmation. See <u>Frances Hosiery</u>, 285 N.C. at 355, 204 S.E.2d at 841-42 (applying statute where evidence was of a complete and valid oral contract followed by a written confirmation containing additional terms); <u>see also</u> <u>Klocek v. Gateway, Inc.</u>, 104 F. Supp. 2d 1332, 1339 (D. Ka. 2000) ("Disputes under § 2-207 often arise in the contest of a 'battle of forms,' but nothing in its language precludes application in a case which involves only one form.") (citation omitted); U.C.C. Official Comment, § 2-207 (2004) ("This section applies to all contracts for the sale of goods, and it is not limited only to those contracts where there has been a 'battle of the forms.'").

_____

judicially construed in New York and North Carolina.").

18

Alternatively, Defendant Frontier argues that the "sales contracts" themselves specify that any additional terms, including material changes, were assented to when Plaintiffs received and retained the sales contracts without objection for 10 days, or when Plaintiffs accepted delivery of the cotton yarn. However, such an argument runs counter to Frances Hosiery, 285 N.C. at 357, 204 S.E.2d at 842 ("[S]uch proposed additional provision may not be deemed incorporated into the contract for sale of yarn . . . by reason of the mere silence of the plaintiff following its receipt of the defendant's [invoices]"); see also Coastal Industries, Inc. v. Automatic Steam Products Corp., 654 F.2d 375, 380 n.10 (5th Cir. 1981) ("Acceptance of the goods and payment of their price without objection to an arbitration clause in the invoice or the written confirmation is not 'unequivocal' behavior . . .").

Finally, the facts in the instant matter can be distinguished from the facts in Real Color Displays v. Universal Applied Techs. Corp., 950 F. Supp. 714, 718 (E.D.N.C. 1997), which Defendant Frontier relies upon to argue that Plaintiffs' silence in the wake of the "sales confirmations" must equal acceptance of additional, material terms to their oral contracts. In Real Color, the court found that an arbitration clause should be enforced where a seller sent to a buyer an offer that included a standard form agreement (with arbitration clause) and the buyer, in response, accepted the offer by sending its own purchase order -- but in fact never signed the offer letter containing the arbitration clause. In Real Color, the purchase order that served as an acceptance to the contract contained no disclaimers or objections to the offer letter. In the instant case, however, there existed a complete oral agreement between the parties that did not

19

include any mention of arbitration prior to Plaintiffs receiving a written confirmation containing an arbitration clause. Furthermore, the court in <u>Real Color</u> acknowledges that U.C.C. § 2-207 was not at issue. <u>Id.</u> at 718 ("This is not a case of the classic 'battle of the forms' . . . ."). Thus, like the plaintiff in <u>Real Color</u>, the Plaintiffs in the instant case chose not to read and sign Defendant Frontier's forms; however, unlike the plaintiff in <u>Real Color</u>, the actions of the Plaintiffs in the instant matter (failing to read and sign the forms) took place after a contract was already formed between the parties and was not a part of overall contract formation.

Therefore, the Court finds that Defendants' arguments concerning the "battle of the forms," Plaintiffs' assent by silence, and applicability of <u>Real Color</u> are unavailing. As such, under North Carolina law,[12] those Plaintiffs that did not sign an arbitration provision with

---

[12] There is some contrary authority to this finding, <u>see</u> <u>Stedor Enterprises, Ltd. v. Armtex, Inc.</u>, 947 F.2d 727 (4th Cir. 1991). However, in <u>Stedor Enterprises</u>, the Fourth Circuit applied South Carolina law, not North Carolina law, and ruled that an agreement to arbitrate existed between textile merchants where the buyer did not read and sign the contract because of the course of dealing between the parties in which prior to every sale the seller would mail a confirmation to the buyer that included an explicit arbitration agreement. <u>Id.</u> at 733 ("Where, as here, a manufacturer has a well established custom of sending purchase order confirmations containing an arbitration clause, a buyer who has made numerous purchases over a period of time, receiving in each instance a standard confirmation form which it either signed and returned or retained without objection, is bound by the arbitration provision."(citation omitted)). The court in <u>Stedor Enterprises</u> did not consider the question of U.C.C. § 2-207. In contrast, in the present case, this Court finds that Defendants have made no showing that a confirmation invoice containing an arbitration clause was sent with every shipment. In fact, from the record presently before the Court, the majority of confirmations between the parties appear not to have included arbitration clauses as a term. For example, Plaintiffs state that based upon discovery into this issue, out of 31 cotton yarn purchases between Defendant Frontier and Plaintiff Atlantic Textiles, Frontier sent only 13 contracts with arbitration clauses (18 invoices without arbitration clauses, 13 contracts with arbitration clauses). As such, Defendants have failed to show a well-established custom of sending purchase order confirmations containing an arbitration clause.

Defendant Frontier (but who received one in an invoice or sales contract), that is, Plaintiffs Atlantic Textiles, SC Tees, and Armen, never entered into an agreement to arbitrate and accordingly will not be required to arbitrate their claims. Similarly, those Plaintiffs that never received a written confirmation from Defendant Frontier, that is, Plaintiffs Mekfir and Little, obviously never entered into an agreement to arbitrate their claims and will not be compelled by this Court to arbitrate their claims. However, under this analysis, Plaintiffs Lesavoy, Perfect Fit, and Thomaston Mills, the three plaintiffs who signed Defendant Frontier's "sales confirmation," did enter into an agreement to arbitrate at least some claims, see Market America, Inc. v. Tong, No. 1:03CV00420, 2004 WL 1618574, at *6 (M.D.N.C. July 15, 2004) (finding that defendants' failure to read a contract before signing it was not grounds for relief from arbitration provision), and the Court must therefore still consider the scope of Frontier's arbitration agreement and whether the agreement is nevertheless unenforceable in this case.

b. Defendant Avondale's Contracts Under South Carolina Law

With respect to Defendant Avondale's contracts under South Carolina law, South Carolina has also adopted U.C.C. § 2-207 at S.C. Code § 36-2-207. However, it is not clear under South Carolina contract law whether the addition of an arbitration agreement would be considered a material change to the parties' agreements. The Court's search of South Carolina law did not reveal any authority with respect to the question of whether the addition of an arbitration clause in a contract at some point other than initial contract formation would be a

_____

Therefore, it would appear factually that the holding of Stedor Enterprises does not apply here.

21

material change, thereby requiring an express agreement between merchants for the arbitration clause to become part of the overall contract. However, the Court notes that in <u>Weisz Graphics Div. of Fred B. Johnson Co. v. Peck Industries, Inc.</u>, 403 S.E.2d 146, 150 (S.C. Ct. App. 1991), the South Carolina appellate court determined that an additional term (specifically a 12-month release program for the sale of specially manufactured goods) was not a material change under S.C. Code § 36-2-207 because such a term was standard in the industry and because of the course of dealing between the parties. <u>Id.</u> (emphasis added). Additionally, the Court notes that in <u>Munoz v. Green Tree Financial Corp.</u>, 542 S.E.2d 360 (S.C. 2001), the Supreme Court of South Carolina reversed a denial of a motion to compel arbitration and found that arbitration clauses located within adhesion contracts are not unconscionable under South Carolina law, and stated that the court was guided by a "liberal policy favoring arbitration." <u>Id.</u> at 364.

In applying this South Carolina law in the present case, this Court acknowledges that arbitration agreements are widespread in the fabric and textile businesses. <u>See</u> <u>Stedor Enterprises, Ltd. v. Armtex, Inc.</u>, 947 F.2d 727, 733 (4th Cir. 1991).[13]  Therefore, considering the Fourth Circuit's application of South Carolina law in <u>Stedor Enterprises</u>, this Court will assume, without deciding, that South Carolina law would not consider the addition of an arbitration

---

[13] However, the Court notes that although arbitration agreements are widespread in the textile industry, those agreements are generally applied to breach of contract cases and not Sherman Act cases or cases concerning other federal statutes.

clause a *per se* material change to a textile contract.[14]  As such, and given that all the parties in this case are merchants, the Court will assume without deciding that the arbitration clauses in Defendant Avondale's sales confirmations became a part of its contracts with Plaintiffs, as per S.C. Code § 36-2-207 (non-material changes become a part of contracts between merchants absent notification of objection to additional terms).  Therefore, under this analysis, all Plaintiffs who purchased cotton yarn from Avondale and who received a written confirmation containing an arbitration clause, that is,  Plaintiffs Atlantic Textiles, SC Tees, Del Cartier, and Thomaston Mills, entered into agreements to arbitrate, and as to these Plaintiffs as well the Court must consider the scope of Avondale's arbitration agreements and whether the agreements are nevertheless unenforceable in this case.  However, Plaintiffs Mekfir and Little, who also purchased cotton yarn from Defendant Avondale, but for whom Avondale has failed to produce any written confirmation, clearly did not enter into any agreement to arbitrate with Defendant Avondale.  Therefore, Plaintiffs Mekfir and Little would not be required to arbitrate their claims against Defendant Avondale.

---

[14] Although a closer question, the Court is concerned that while the addition of an arbitration clause to these agreements was not a *per se* material change, it may have been simply a material change to the oral agreements.  Material changes are ones that would result in "unreasonable surprise or hardship" to the party opposing its incorporation into the contract.  See Weisz Graphics, 403 S.E.2d at 150.  Given that Defendant Avondale now wishes to apply this arbitration clause to a statutory Sherman Act claim, and not simply a breach of contract action, Plaintiffs appear to argue that it results in an unreasonable surprise or hardship.  However, given the ultimate resolution of this action, the Court need not fully address this question.  The Court will assume without deciding that, on the facts of this case, the addition of an arbitration clause to the contracts between Defendant Avondale and Plaintiffs did not constitute a material change to their oral agreements.

Thus, for the reasons stated above, Plaintiffs Atlantic Textiles, SC Tees, Armen, Mekfir, and Little would not be required to arbitrate their Sherman Act claims against Defendant Frontier. Plaintiffs Mekfir and Little also would not be required to arbitrate their Sherman Act claims against Defendant Avondale, since it has not been shown that they ever entered into a contract with Avondale that contained an arbitration agreement. The Court therefore finds that the Remaining Plaintiffs did enter into some arbitration agreement with Defendants, that is, Plaintiffs Lesavoy, Perfect Fit, and Thomaston Mills (concerning arbitration with Defendant Frontier), and Plaintiffs Atlantic Textiles, Del Cartier, SC Tees, and Thomaston Mills (concerning arbitration with Defendant Avondale) (altogether, the "Remaining Plaintiffs"). Accordingly, going forward with respect to these Remaining Plaintiffs, the Court must consider the scope of the particular arbitration clauses at issue, that is, whether the clauses are written broadly enough that they would even apply to a dispute concerning a price-fixing conspiracy under the Sherman Act. In addition, even if the arbitration clauses would apply to this type of case, the Court must also consider whether particular provisions of the arbitration clauses as written are incompatible with the Sherman Act, and thereby are unenforceable.

C.      Scope of the Arbitration Agreement

Plaintiffs earlier argued in a hearing before this Court that the specific language used in Defendants' Frontier and Avondale's arbitration provisions of the sales contracts at issue reveal that a price-fixing antitrust claim, as Plaintiffs have asserted, was not considered by the parties as being covered by the mandatory arbitration clause. The Court notes, to begin with, that the

24

language of both arbitration clauses is particularly broad and provides that: "any controversy arising out of or relating to this contract" must be arbitrated. Such broad language has generally been interpreted to include an antitrust price-fixing case. See JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 175 (2d Cir. 2004) (holding that an arbitration clause with the language "any and all differences and disputes of whatsoever nature arising out of this Charter" applies to Sherman Act claims that involve allegations of inflated prices); Nat'l Ass'n of Assoc. Publishers v. Prince Publ'g, Inc., No. 6:96CV1063, 1997 U.S. Dist. LEXIS 8574, at *10 (M.D.N.C. May 8, 1997) (applying an arbitration clause with the language "arising hereunder" to an antitrust price-fixing claim). However, Plaintiffs point to other language within the arbitration clause itself, particularly language that states that any claim must be brought within one year of the "breach," in order to show that price-fixing conspiracy claims do not arise out of or relate to the language of these arbitration clauses.

As the Court has previously noted, federal policy favors arbitration to the point that any doubts about arbitrability are to be resolved in favor of arbitration. As such, the Court concludes that while compelling, Plaintiffs' argument concerning the limited scope of the arbitration clauses would be ultimately unavailing, were it the only argument that Plaintiffs put forward. The fact that some of the later language in the arbitration clause itself, particularly concerning the statute of limitations, uses the word "breach" does not necessarily negate the more general language that "any controversy arising out of or relating to this contract" must be arbitrated. In any case, such language is ambiguous. The U.S. Supreme Court has repeatedly

stated that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and that "any doubts concerning the scope of arbitrable issues . . . be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24-25, 103 S. Ct. at 941.

Therefore, the Court finds that the scope of the arbitration provisions in this case extends to claims based upon a price-fixing conspiracy. As such, the claims of the Remaining Plaintiffs, that is, Plaintiffs Lesavoy, Perfect Fit, and Thomaston Mills (concerning arbitration with Defendant Frontier), and Plaintiffs Atlantic Textiles, Del Cartier, SC Tees, and Thomaston Mills (concerning arbitration with Defendant Avondale) would be included in the scope of the arbitration provisions included in the sales contracts. However, Plaintiffs nevertheless contend that even if the arbitration clauses would otherwise apply, they are unenforceable because as applied in the present case they are inconsistent with the Sherman Act, and thus would fail to provide relief to Plaintiffs of their statutory rights. The Court will therefore turn to a consideration of whether these particular arbitration provisions are enforceable as to the claims in this case, and will discuss this argument in particular as to Remaining Plaintiffs, although the resolution of this argument applies to all Plaintiffs.

D.      Unenforceability Under the Sherman Act

Plaintiffs argue that the particular provisions of these arbitration clauses as applied to a price-fixing conspiracy case are both unenforceable and unconscionable. Plaintiffs argue that, in particular, the potential limitation on damages, the clear prohibition on joinder of parties, and the one-year statute of limitations on claims show that these arbitration clauses cannot be

26

reconciled with the statutory purposes of the Sherman Act. As such, Plaintiffs argue that this Court should not enforce the arbitration clauses, but rather Plaintiffs request that the arbitration clauses be deemed unenforceable as effectively barring Plaintiffs' rights to vindicate their statutory claims.

In analyzing these contentions, the Court notes first that while Defendant Avondale's form (but not Defendant Frontier's)[15] expressly prevents the arbitrator from awarding any "consequential, indirect, special, punitive damages or damages for lost profit," such language does not clearly prevent an arbitrator from awarding treble damages. See PacifiCare Health Sys. v. Book, 538 U.S. 401, 406, 123 S. Ct. 1531, 1535 (stating that a private antitrust action that allows for treble damages was created as a remedy for the victims of antitrust violations, and concluding in a Racketeer Influenced and Corrupt Organizations Act case that similar language limiting damages did not clearly bar treble damages and so question of any bar should be left to an arbitrator to decide in the first instance). Because this language does not clearly prohibit Plaintiffs from vindicating their statutory rights to treble damages, the Court finds that (were it only to consider this damages question) Plaintiffs have not overcome their burden of showing that these arbitration clauses are unenforceable at least in this regard.

The Court has more concern, however, over provisions in the arbitration agreements that prevent both joinder of parties (either as a plaintiff or defendant), and that provide for a one-year

---

[15] Defendant Frontier's arbitration clause does not include this language concerning limitation of damage remedies available in arbitration.

statute of limitations. Plaintiffs bring their antitrust claim alleging a *conspiracy* among Defendants to raise and stabilize the price of cotton yarn. Under Section 1 of the Sherman Act, the first element is proof of an *agreement* to restrain trade. See Levine v. Central Fla. Medical Affiliates, 72 F.3d 1538, 1545 (11th Cir. 1996) ("A section 1 plaintiff must prove an agreement between two or more persons to restrain trade, because unilateral conduct is not illegal under section 1.") Conspiracy claims require entirely different elements from breach of contract claims, and because of this at least one court has found that "conspiracy allegations in antitrust cases cannot be compartmentalized and considered in isolation 'as if they were separate lawsuits, thereby overlooking the conspiracy claim itself.'" Jung v. Ass'n of Am. Med. Colleges, 300 F. Supp. 2d 119, 155 (D.D.C. 2004) (citation omitted). While courts have not required plaintiffs alleging an antitrust conspiracy to sue all alleged co-conspirators, "[i]t is fundamental that a single person or entity cannot by itself alone form a 'contract, combination or conspiracy.'" Hennessey v. National Collegiate Athletic Ass'n, 564 F.2d 1136, 1147 (5th Cir. 1977). Additionally, "[P]laintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole . . ." Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 699, 82 S. Ct. 1404, 1410 (1962) (internal quotations omitted). In the instant case, Plaintiffs allege, and Defendants do not deny, that Plaintiffs will, under the present language of the arbitration clauses, be unable to join Defendants

28

in arbitration, thereby potentially resulting in hundreds of inconsistent arbitrations.[16] Moreover, such a result would impermissibly treat Plaintiffs' lawsuit as if it were against two separate and unconnected Defendants.  See Continental Ore, 370 U.S. at 698-99, 82 S. Ct. at 1410 ("It is apparent from the foregoing that the Court of Appeals approached [plaintiff's] claims as if they were five completely separate and unrelated lawsuits.  We think this was improper.").  Thus, the Court finds, similar to the court in Jung, that there is a "clear and compelling countervailing interest in the comprehensive adjudication of conspiracy claims brought under the Sherman Act," and thus, any language concerning the impossibility of joinder of Defendants in the arbitration clauses cannot be enforced.[17] Jung, 300 F. Supp. 2d at 156.

As for Plaintiffs' statute of limitations argument, under the Sherman Act, plaintiffs generally have four years in which to bring a claim for private antitrust litigation.  See 15 U.S.C. § 15b.  The Court finds that limiting a claim to one year, such as exists here, would not allow Plaintiffs time to properly vindicate their statutory rights.  Additionally, the Court notes that

---

[16] During the Court's hearing on this matter, the Court asked Defendant Avondale's attorney whether Defendants' position would result in "100 separate cases for 100 separate arbitrations?"  Defendant Avondale's attorney agreed that that would be the result.  (Tr. Mot. Hr'g, August 30, 2005, at 52.)

[17] The Court further notes that the issue it confronts in this matter is not the same as that addressed in Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 638 (4th Cir. 2002), cited by Defendants, in which the Fourth Circuit rejected an argument that an arbitration agreement preventing class action status was unconscionable.  In that case, and in other cases that allow arbitration agreements to foil class action status, the courts have found that plaintiff's small amount of individual damages could be pursued in arbitration as she could recover attorney's fees.  Snowden and other similar cases, however, did not concern a plaintiff's very ability to prove a conspiracy claim and vindicate statutory rights.

Case 1:04-md-01622-JAB     Document 42     Filed 11/09/05     Page 29 of 34

the specific language of these arbitration agreements provides that it is a Court, and not an arbitrator, that must decide statute of limitations issues. (Defs.' Mot. Dismiss, Ex. A ("All issues relating to Statute of Limitations barring or preventing the commencement of proceedings are not arbitrable and shall be determined by the Court and not the arbitrators who shall have no power or jurisdiction to determine such issues.").) Thus, in no case would this provision be enforceable, either in this Court or in arbitration.

What troubles the Court, however, is that these two clauses, in particular, concerning joinder of Defendants and the statute of limitations, would, if strictly applied, clearly prevent Plaintiffs from "effectively . . . vindicat[ing] [their] statutory cause of action in the arbitral forum." See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 637, 105 S. Ct. at 3359. Each Plaintiff would be forced to bring separate arbitration proceedings against each Defendant at the same time in order to even attempt to prove a conspiracy price-fixing claim, which would have the effect of wiping the conspiracy slate clean for every new arbitration. The Court notes that it is the alleged combined acts of Defendants – not the individual acts which by themselves may or may not be illegal – to fix, maintain, or stabilize prices for cotton yarn sold in the United States that are the focus of Plaintiffs' Sherman Act inquiry.

Furthermore, a one-year statute of limitations would not allow Plaintiffs to effectively vindicate their statutory rights. Unlike a simple breach of contract claim concerning, for example, the quantity of cotton yarn delivered to Plaintiffs, which could be discovered upon delivery of the merchandise, these alleged Sherman Act violations were discovered years after

30

such alleged price-fixing had occurred, and only then because a part-owner of former Defendant Parkdale admitted in its Securities and Exchange Commission Form 8-K filing that such conduct may have occurred.[18] In the instant case, Plaintiffs have alleged that Defendants conspired to fix the price of yarn since 1999. By attempting to now apply the arbitration clauses to these claims, Defendants significantly limit Plaintiffs ability to obtain a remedy for these alleged violations and attempt to significantly change Defendants' statutory obligations. The Court notes that Defendants alternatively could have written their arbitration clauses more generally, instead of putting such impermissible restrictions on potential plaintiffs, such that any resulting lawsuit is merely taken from the court house steps and deposited, without any significant changes to statutory rights, before the arbitral panel. Or, with respect to the joinder question in particular, Defendants could have included a provision that would provide an exception to the duty to arbitrate for multi-party situations. Defendants, in the instant matter, did neither. Therefore, the Court finds that the arbitration clauses at issue are unenforceable with respect to the claims in this case because the arbitration clauses are inconsistent with Plaintiffs' ability to effectively vindicate their statutory rights within the context of a Sherman Act claim in at least two respects, that is, with respect to the applicable statute of limitations and the ability to join parties

---

[18] More specifically, Plaintiffs state that they brought this claim against Defendants because Unifi, Inc., which owns a 34 percent interest in settling Defendant Parkdale America, issued a press release on February 11, 2004, and amended its Form 8-K filed with the Securities and Exchange Commission, to reflect the fact that "Parkdale participated in activities with competitors . . . that may have resulted in violations of U.S. antitrust laws . . ." (Consolidated and Am. Class Action Compl., at 13.)

in a statutory conspiracy claim. As such, the Court will now consider the appropriate remedy needed to address the adverse effect of these arbitration clauses on Plaintiffs' statutory rights.

      E.      Remedy to Allow Plaintiffs to Effectively Vindicate Their Statutory Rights

Where an arbitration clause prevents vindication of statutory rights, at least one court has solved the issue by severing the problematic provision and sending the rest of the case to arbitration. See Safranek, 379 F. Supp. 2d at 935 (concerning Title VII and applying Illinois contract law to sever attorney's fees portion of arbitration clause because the bar on attorney's fees did not go to the "essence" of the agreement). However, where, as here, multiple provisions of the arbitration clauses are inconsistent with Plaintiffs' ability to effectively vindicate their statutory rights, including the prohibition on joinder of parties, the statute of limitations, and, to a lesser extent a potential limitation of damages in Defendant Avondale's contracts, the Court finds that the better course of action in this case is to excise the arbitration clauses altogether. See Graham Oil Co. v. ARCO Prods. Co., 43 F.3d 1244, 1249 (9th Cir. 1994) (finding that severance of arbitration provision was appropriate where it forfeits statutorily-mandated rights to recover exemplary damages, reasonable attorney's fees, and provides for a 90-day statute of limitations unlike the statute's one-year statute of limitations); see also Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1180 (9th Cir. 2003) (severing entire arbitration provision instead of redrafting the provision at issue because of unconscionable clauses); Paladino v. Avnet Computer Techs., 134 F.3d 1054, 1062 (11th Cir. 1998) (voiding arbitration clause as a whole because it insulated defendant from Title VII damages and equitable relief). Furthermore, the arbitration

clauses at issue do not include severance clauses so as to further justify the Court's ability to draw lines through unenforceable provisions. See Anders v. Hometown Mortg. Servs., 346 F.3d 1024, 1030 (finding that individual, unenforceable provisions of arbitration clause could be stricken, particularly because parties included a clause in contract itself that concerned severability of provisions). Moreover, the Court agrees that "severance [of particular illegal clauses of an overall arbitration agreement] is inappropriate when the entire clause represents an integrated scheme to contravene public policy." Graham, 43 F.3d at 1249 (internal quotations omitted). While these particular arbitration provisions may not "represent an integrated scheme to contravene public policy" in the abstract, or as applied to a breach of contract claim, when applied to a conspiracy price-fixing case, the Court finds that on the facts of this case they appear to have that effect. See Ingle, 328 F.3d at 1180 ("While many of the terms of Circuit City's arbitration agreement appear facially neutral, the effect of these provisions is to obstruct its employees' ability to substantiate claims against Circuit City.")

Because the Court finds that Defendants' arbitration clauses purportedly limit the statute of limitations to one year and not four, as provided under the Sherman Act, and because the Court finds that the arbitration clauses' prohibition on joinder of parties would contravene public policy by allowing Defendants to effectively escape liability for an alleged Sherman Act violation of conspiracy to fix the price of cotton yarn, the Court will excise the arbitration

33

clauses from the Remaining Plaintiffs' contracts and not order the parties to arbitrate.[19] As such, Defendants' Motion to Dismiss is denied as to all Plaintiffs.

## V.      CONCLUSION

For the reasons discussed herein, Defendants' Motion to Dismiss the Complaint as to Certain Plaintiffs and Compel Arbitration, and to Stay the Case as to the Remaining Plaintiffs [Document #9] is DENIED.   However, Defendants' Motion to Strike [Document #35] is GRANTED.

This, the 9th day of November, 2005.

                                                  _____
                                                  United States District Judge

---

[19] Based upon this finding, the Court need not discuss further Plaintiffs' alternate argument that these arbitration clauses are unconscionable under North Carolina law.

34